ORAL ARGUMENT NOT YET SCHEDULED

BRIEF AND ADDENDUM FOR APPELLEE

———————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 11-3074

———————————————

UNITED STATES OF AMERICA,                     Appellee,

v.

MELVIN TAPLET, JR.                          Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

<div style="margin-left:40%">

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
SUZANNE GREALY CURT
ANTHONY SCARPELLI
 * JOHN CUMMINGS, D.C. Bar #986573
Assistant United States Attorneys

 * Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

</div>

Cr. No. 08-338 (RJL)

# Certificate of Parties, Rulings, and Related Cases

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, Melvin Taplet, Jr., and appellee, the United States of America.

## Rulings Under Review

This is an appeal from appellant's conviction and sentence. Following a jury trial before the Honorable Richard J. Leon, appellant was found guilty of one count of use of interstate commerce facilities to commit murder-for-hire, in violation of 18 U.S.C. § 1958. Appellant claims (1) that the district court should have dismissed the indictment because his trial did not commence within the time allowed by the Speedy Trial Act, 18 U.S.C. § 3161; (2) that the district court violated his Six Amendment right to a speedy trial; (3) that the district court erred when it denied his motion for judgment of acquittal; (4) that the district court erred when it denied his request to modify the jury instruction on the element of interstate commerce in 18 U.S.C.

§ 1958(a); (5) that the district court erred when it did not allow appellant to complete his sentencing allocution; and (6) that the district court imposed an unreasonable sentence. There are no known published opinions concerning these rulings.

## Related Cases

Appellee is unaware of any related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations other than those attached hereto are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE ............................................ 1

   The Trial .......................................................................... 2

      The Government's Evidence ......................................... 2

SUMMARY OF ARGUMENT .................................................... 8

ARGUMENT ........................................................................ 11

I.   The Delay Between Appellant's Arraignment and Trial
     Violated Neither the Speedy Trial Act, Nor the Sixth
     Amendment .................................................................. 11

    A.   Speedy Trial Act Claims ...................................... 11

       1.   Proceedings Predating Appellant's Final Renewed
          Motion to Dismiss the Indictment Pursuant to
          the Speedy Trial Act. .................................... 11

       2.   Proceedings After Appellant's Final Renewed
          Motion to Dismiss the Indictment Pursuant to
          the Speedy Trial Act. .................................... 21

    B.   Standard of Review .............................................. 23

    C.   Argument ............................................................ 25

       1.   The Non-Excluded Days Identified by Appellant
          That Pre-date his Final Motion to Dismiss That
          was Made on January 18, 2011, do not Exceed 70-
          Days. ............................................................ 25

          a.   February 3 – March 25, 2009 (50 Days) ............. 26

          b.   September 11-25, 2009 (14 Days). ..................... 27

          c.   October 26, 2009, to January 27, 2010 (93
             Days). ...................................................... 27

       d.   May 14-25, 2010 (12 Days)....................................28

    2.   Appellant has Waived his Right to Seek Dismissal Under the Speedy Trial Act for any Delays Occurring After January 18, 2011...................30

    3.   Even if Appellant has not Waived his Right to Challenge the Passage of Time from January 11, 2011, to February 14, 2011, That Time was Automatically Excluded by a Pending Motion............34

II.  The Passage of Time between Appellant's Arrest and Trial did not Violate the Sixth Amendment. ...........................35

  A.  Background........................................................35

  B.  Standard of Review............................................36

  C.  Argument ........................................................37

    1.   Length of delay.............................................38

    2.   Reason for Delay ..........................................39

    3.   Appellant's assertion of his right................................43

    4.   Prejudice....................................................43

III.  The Evidence of Interstate Commerce was Sufficient to Support Appellant's Conviction................................................44

  A.  Standard of Review............................................44

  B.  Background........................................................45

  C.  Argument ........................................................46

IV.  The Trial Court Properly Denied Appellant's Request to Modify the Jury Instruction on Interstate Commerce.............51

  A.  Standard of Review............................................51

  B.  Background........................................................52

iv

C.    Argument ................................................................... 54

V.    The Trial Court did not Err When it Directed Appellant to
      Focus on Issues Related to Sentencing During Appellant's
      Allocution. ................................................................... 56

A.    Standard of review ...................................................... 56

B.    Background ................................................................. 56

C.    Argument ................................................................... 59

VI.   The Court did not Impose an Unreasonable Sentence ............ 61

A.    Standard of Review ..................................................... 61

B.    Background ................................................................. 62

C.    Argument ................................................................... 64

CONCLUSION ................................................................... 67

# TABLE OF AUTHORITIES*

*Barker v. Wingo,* 407 U.S. 514 (1972) .................................................. 37, 42

*Couch v. United States*, 235 F.2d 519 (D.C. Cir. 1956) .......................... 60

*Czekalski v. LaHood,* 589 F.3d 449 (D.C. Cir. 2009) .............................. 51

*Doggett v. United States,* 505 U.S. 647 (1992) ....................................... 38

*Gall v. United States,* 552 U.S. 38 (2007) ......................................... 61-62

*Henderson v. United States,* 476 U.S. 321 (1986) ................................... 24

*In re Sealed Case,* 527 F.3d 188 (D.C. Cir. 2008) ....................... 62, 64-65

*United States v. Abad,* 514 F.3d 271 (2nd Cir. 2008) ............................. 37

*United States v. Alden*, 527 F.3d 653 (7th Cir. 2008) ............................. 60

*United States v. Archer,* 486 F.2d 670 (2nd Cir. 1973) .......................... 50

*United States v. Branham,* 515 F.3d 1268 (D.C. Cir. 2008) ................... 44

*United States v. Carasco*, 257 F.3d 1045 (9th Cir. 2001) ....................... 32

*United States v. Coates*, 949 F.2d 104 (4th Cir. 1991) ........................... 46

*United States v. Connor*, 926 F.2d 81 (1st Cir. 1991) ............................ 31

*United States v. Dickerson*, 163 F.3d 639 (D.C. Cir. 1999) .................... 51

*United States v. Ferguson,* 565 F. Supp. 2d 32 (D.D.C. 2008) ............... 27

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008)................61

*United States v. Gaskins,* 690 F.3d 569 (D.C. Cir. 2012) ......................44

*United States v. Gates*, 709 F.3d 58 (1st Cir. 2013)..........................25, 31

*United States v. Gearhart,* 576 F.3d 459 (7th Cir. 2009) ......................37

*United States v. Godines*, 433 F.3d 68 (D.C. Cir. 2006) ........................66

*United States v. Gomez*, 67 F.3d 1515 (10th Cir. 1995).........................37

*United States v. Green,* 516 Fed. Appx. 113 (3rd Cir. 2013) .................36

*United States v. Harris,* 491 F.3d 440 (D.C. Cir. 2007)........................27

*United States v. Hernandez*, 291 F.3d 313 (5th Cir. 2002)....................56

*United States v. Hines*, 694 F.3d 112 (D.C. Cir. 2012) .....................24, 33

*United States v. Jarvi,* 537 F.3d 1256 (10th Cir. 2008).........................61

*United States v. Kayode,* 254 F.3d 204 (D.C. Cir. 2001)........................44

*United States v. LaGasse*, 269 Fed. Appx. 87 (2nd Cir. 2008)...............31

*United States v. Laureys,* 653 F.3d 27 (D.C. Cir. 2011)........................44

*United States v. Lopesierra-Gutierrez,* 708 F.3d 193 (D.C. Cir.),
    *cert. denied* 134 S.Ct. 330 (2013) ..............................................38-39, 43

*United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010) ................................62

*United States v. Mack,* 200 F.3d 653 (9th Cir. 2000).............................56

*United States v. Mahoney,* 527 Fed. Appx. 467 (6th Cir. 2013) ............56

*United States v. Mandel,* 647 F.3d 710 (7th Cir. 2011)..........................50

*United States v. Marek,* 238 F.3d 310 (5th Cir. 2001) ............................ 47

*United States v. Mathis*, 96 F.3d 1577 (11th Cir. 1996) ........................ 32

*United States v. Mayes*, 917 F.2d 457 (10th Cir. 1990) ......................... 32

*United States v. McNeil,* 911 F.2d 768 (D.C. Cir. 1990) ........................ 25

*United States v. Means,* 297 Fed. Appx. 755 (10th Cir. 2008) .......... 47-48

*United States v. Mitchell,* 392 F.2d 214 (2nd Cir. 1968) ....................... 60

*United States v. Mondragon-Hernandez,* 546 Fed. Appx. 693
    (9th Cir. 2013) ..................................................................... 32

*United States v. Morales,*  440 Fed. Appx. 776 (11th Cir. 2011) ............ 65

*United States v. Mosteller*, 741 F.3d 503 (4th Cir. 2014) ...................... 32

*United States v. Muniz*, 1 F.3d 1018 (10th Cir. 1993) ........................... 60

*United States v. O'Connor,* 656 F.3d 630 (7th Cir. 2011) ...................... 36

*United States v. Olano,* 507 U.S. 725 (1993) ......................................... 37

*United States v. Payton*, 257 Fed. Appx. 879 (6th Cir. 2007) ................ 31

*United States v. Peters*, 952 F.2d 960 (7th Cir. 1992) ............................ 51

*United States v. R.J.S. Jr.*, 366 F.3d 960 (8th Cir. 2004) ...................... 48

*United States v. Rezaq*, 134 F.3d 1121 (D.C. 1998) ............................... 50

*United States v. Rice,* 746 F.3d 1074
    (D.C. Cir. 2014) ......................................... 23-24, 29, 32, 34, 36, 38, 43

*United States v. Russell,* 600 F.3d 631 (D.C. Cir. 2010) ....................... 62

*United States v. Serna-Villarreal,* 352 F.3d 225 (5th Cir. 2003)............37

*United States v. Taylor*, 497 F.3d 673 (D.C. Cir 2007) ...........................33

*United States v. Tchibassa,* 452 F.3d 918 (D.C. Cir. 2006) ..............37-38

*United States v. Thomas,* 114 F.3d 228 (D.C. Cir. 1997).................52, 56

*United States v. Thomas*, 282 Fed. Appx. 244 (4th Cir. 2008) ...............50

*United States v. Van Smith,* 530 F.3d 967 (D.C. Cir. 2008).............23, 29

*United States v. Wallace*, 85 F.3d 1063 (2nd Cir. 1996) .........................51

*United States v. Weathers,* 169 F.3d 336 (6th Cir. 1999) .................47-48

*Wirsing v. United States*, 867 F.2d 1227 (9th Cir. 1989)........................32

*Zedner v. United States,* 547 U.S. 489 (2006) .........................................24

## OTHER AUTHORITIES

18 U.S.C. § 2 .................................................................................................1

18 U.S.C. § 1958 ....................................................................................1, 55

18 U.S.C. § 1958(a) ....................................................................................47

18 U.S.C. § 1958(a) (2004)...................................................................45, 47

18 U.S.C. § 3161 ....................................................................................11, 23-24

18 U.S.C. § 3161(c)(1) ...........................................................................12, 23

18 U.S.C. § 3161(h).....................................................................................23

18 U.S.C. § 3161(h)(1)(D) .................................................. 24, 26-27, 29, 34

18 U.S.C. § 3161(h)(1)(H) ................................................................. 29

18 U.S.C. § 3162(a)(1) ..................................................................... 33

18 U.S.C. § 3162(a)(2) ............................................................. 24, 32-33

18 U.S.C. § 3553(a) ......................................................................... 57

Fed. R. Crim. P. 32(i)(4)(A)(ii) ................................................. 56-57, 60

Pub.L. 108–458, 2004 S 2845 (2004) ..................................................... 47

U.S.S.G. § 5G1.1(a) ......................................................................... 65

U.S.S.G. § 5G1.1(a) commentary ........................................................... 65

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 11-3074

———————————————

UNITED STATES OF AMERICA,                              Appellee,

v.

MELVIN TAPLET, JR,                              Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

BRIEF FOR APPELLEE

———————————————

## COUNTERSTATEMENT OF THE CASE

On December 8, 2008, a grand jury returned a superseding
indictment charging appellant with using interstate commerce facilities
to commit murder-for-hire and aiding and abetting, in violation of 18
U.S.C. §§ 1958, 2 (J.A. 21).[1] Appellant was arraigned on the indictment

———————————————

[1] "J.A. [no.]" refers to the Joint Appendix on appeal. "S.A. [no.]" refers to
Appellee's Supplemental Appendix on appeal.

on February 3, 2009 (*id.* at 27). Trial commenced on February 14, 2011, before the Honorable Richard J. Leon (*id.* at 410). On February 18, 2011, the jury convicted appellant (*id.* at 928). On August 3, 2011, Judge Leon entered judgment in the case, sentencing appellant to ten years of incarceration, 36 months of supervised release, and a $100 special assessment (*id.* at 1010-15). Appellant filed a timely notice of appeal (*id.* at 1016).

## The Trial

### *The Government's Evidence*

In 2008, Ms. Danielle Buck was living in Hermon, Maine with her three children (J.A. at 673). Ms. Buck's address was 505 Ridgewood Apartments, apartment number 102 (*id.*) Ms. Buck formed a close relationship with her neighbor, Kimberly McLaughlin (*id.* at 677). In 2008, Ms. McLaughlin introduced Ms. Buck to appellant (*id.*). Appellant was dating Ms. McLaughlin, and moved into her apartment shortly after Ms. Buck first met him (*id.* at 680).

Over time, Ms. Buck noticed changes in Ms. McLaughlin's demeanor, which she attributed to appellant's control over Ms. McLaughlin (J.A. 682-83). The relationship between appellant and Ms.

2

McLaughlin soured, and Ms. Buck heard Ms. McLaughlin ask appellant to leave her home (*id.* at 683). Ms. Buck spoke to Ms. McLaughlin and encouraged her to part ways with appellant (*id.* at 688). Ms. McLaughlin eventually ended her relationship with appellant (*id.* at 689). Appellant responded by calling Ms. McLaughlin up to 50 times a day (*id.* at 689). Ms. Buck took some of these calls to encourage appellant to stop calling (*id.* at 689-90). The tension in these phone calls escalated, with Ms. Buck threatening to notify law enforcement about the harassing calls, and informing appellant that she and Ms. McLaughlin were capable of defending themselves (*id.* at 691-92). During their final exchange, in August of 2008, appellant threatened to kill Ms. Buck (*id.* at 691, 698).

On August 24, 2008, appellant was in the T&A Truck Stop in Elkton, Maryland (J.A. at 715). Appellant was sitting with two truck drivers when their group was joined by Jerome Thomas (*id.* at 715). Thomas knew one of the truck drivers, and all four of the men joined in conversation (*id.* at 715). Eventually, the truck drivers left, leaving appellant and Mr. Thomas alone (*id.* at 716). As appellant and Mr. Thomas talked, appellant told Mr. Thomas about his relationship with

3

Ms. McLaughlin (*id.* at 716-17). Appellant became enraged when he talked about Ms. McLaughlin's neighbor, who he identified as "Ms. Danielle" (*id.* at 717). Appellant said that Ms. Buck was interfering with his relationship with his girlfriend, and that appellant "would like to really get rid of the bitch or have something seriously done to her" (*id.* at 718). Thomas told appellant that if he was serious, he could "take care of that situation" for a fee of $7,000-$10,000 (*id.* at 718). Before they parted ways, appellant provided Mr. Thomas with his cell phone number (*id.* at 719).

The next day, appellant and Mr. Thomas met again (J.A. 720). Appellant reaffirmed his desire to have Buck killed, and told Thomas that he was going back to work so he could pay Thomas (*id.* at 720). Appellant provided Thomas with a piece of paper that included the name "Danielle" and Ms. McLaughlin's address in the State of Maine, 505 Ridgewood Apartments, Number 103, Hermon, Maine 04401 (*id.* at 577-78, 721).

Unbeknownst to appellant, Thomas had worked for the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), as a paid informant (J.A. 713-14). Thomas

4

participated in several investigations, including narcotics trafficking, murder-for-hire, money-laundering, and a bank robbery (*id.* at 713). Thomas had received approximately $69,000 as a result of his cooperation (*id.* at 712-14). After his second conversation with appellant, Thomas called his handler at ICE, Special Agent Steve Soggin, and told him about his conversations with appellant (*id.* at 721-22). Thomas provided Agent Soggin with the documents he had received from appellant (*id.* at 575, 577). Agent Soggin in turn provided Thomas with electronic devices to record conversations with appellant (579-81). ICE also provided Thomas with a car that he used to record video and audio conversations with appellant (*id.* at 581-82).

On August 31, 2008, Thomas called appellant's cell phone and set up a meeting with appellant (J.A. 723-24). Thomas and appellant met at the T&A truck Stop in Elkton, Maryland (*id.* at 730). During their conversation, Thomas confirmed that he had the piece of paper with Buck's address (*id.* at 730-31). Appellant provided Thomas with the name of a secluded town where Thomas could kill Buck (*id.* at 731). Appellant and Thomas also agreed that Thomas would provide appellant with Buck's driver's license and a photograph after she was

5

killed, to confirm that Thomas had executed Buck (*id.* at 731). Appellant instructed Thomas to make sure he used lime in the hole where they dumped the body, and to dig the hole deep enough to keep coyotes from digging up the body (*id.* at 732). Appellant and Thomas also discussed a payment plan that included a $1,500 wire transfer to Thomas once appellant started working again (*id.* at 732). Appellant told Thomas that he would get him a picture of Buck so he could kill the right person (*id.* at 732-33).

Later on that same day, appellant met Thomas and provided a photograph of Buck (J.A. 734). Appellant did not want to wire the money to Thomas, and suggested instead that he send the money to Thomas through a post office box (*id.* at 734-35). Later on that same day, Thomas called appellant's cell phone, and provided his post office box information (*id.* at 736-37). At the end of this conversation, appellant told Thomas that everything was up in the air until he got back to work so he could pay Thomas, and so he would have an alibi when Thomas killed Buck (*id.* at 737).

Appellant and Thomas met again on September 13, 2008 (J.A. 740). Thomas held himself out as a drug dealer, so they discussed a

plan to have appellant weld a hidden compartment into a car as partial payment for killing Buck (*id.* at 599, 742). During an October 1, 2008, meeting, appellant agreed to travel with Thomas to Washington, D.C. to meet with Thomas's alleged fellow hit-man (*id.* at 745-46). Appellant asked Thomas to tell Buck, in the moments before Thomas killed her, that she was being killed at appellant's request (*id.* at 745).

On October 2, 2008, appellant picked Thomas up in Maryland and drove to the parking lot at Robert F. Kennedy Stadium in Washington, D.C. (J.A. 746).[2] They were joined by Special Agent Tony Rodriguez, posing as Thomas's fellow hit-man (*id.* at 610). In the parking lot appellant tried, unsuccessfully, to construct the hidden compartment (*id.* at 610-11, 810-12). Appellant told Agent Rodriguez that after he started work in West Virginia, he would get the correct materials so he could finish building the hidden compartment (*id.* at 812). Appellant also provided Agent Rodriguez with additional details regarding Buck's physical description, apartment location, the type of car she drove, and the fact that she had children (*id.* at 813). During this meeting,

---

[2] Agent Soggin acknowledged that he selected the site in Washington, D.C. even though there were other parking lots near Elkton (J.A. 650).

7

appellant, Thomas and Agent Rodriguez also affirmed their agreement that they would take Bucks's driver's license as proof of the murder, and after showing the license to appellant, they would burn it (*id.* at 814-15). They also agreed that they would commit the murder while appellant was at work in West Virginia, so that he would have an irrefutable alibi (*id.* at 815).

Thomas's final conversation with appellant took place on November 22, 2008. Thomas told appellant that he had already been to Maine to conduct surveillance, and that he was ready to head back to Maine to "take care of Miss Danielle" (J.A. 752-753). Appellant never withdrew his request to have Buck killed (*id.* at 779). Appellant was arrested in West Virginia on November 26, 2008 (*id.* at 615). Appellant had $2,000 in cash in his possession (*id.* at 616).

## SUMMARY OF ARGUMENT

The trial court did not violate appellant's rights under the Speedy trial Act ("STA") by proceeding to trial. The trial court properly denied appellant's motion to dismiss the indictment because fewer than 70-days of non-excludable time passed between appellant's first appearance in this case and the denial of his STA motion. Appellant did

not renew his motion to dismiss the indictment after the court continued the case for trial from January 18, 2011, until February 14, 2011, and appellant now claims for the first time on appeal that this continuance contributed to a violation of the STA. Appellant has waived this claim. In any event, because there was still an outstanding motion, this time was properly excluded under the STA.

Similarly, the delays in bringing the case to trial did not violate appellant's Sixth Amendment speedy trial right, which he asserts for the first time on appeal. Except for a delay in transporting appellant to the jurisdiction, and a delay as the result of the court's unavailability, appellant joined in, consented to, or created the continuances that extended the time from arrest to trial in this case. Further, appellant has failed to articulate how the delay prejudiced his defense.

The court did not err when it denied appellant's motion for judgment of acquittal because the government satisfied the interstate commerce element of the offense by introducing evidence that appellant provided his cellphone number to the would be hit-man; spoke with the would be hit-man on his cell phone in furtherance of the plan to kill Ms.

Buck; and appellant traveled from the State of Maryland into the District of Columbia in furtherance of the plan to kill Ms. Buck.

The trial court did not abuse its discretion when it denied appellant's modified jury instruction on interstate commerce, because the proposed instruction did not accurately state the law and would have confused the jury.

The trial court did not err when it instructed appellant to stop reading from a prepared text during allocution because that document did not address issues related to sentencing. Once redirected by the court, appellant was allowed to continue his allocution to make arguments that were pertinent to sentencing.

The trial court did not commit plain error when it sentenced appellant to the statutory maximum penalty of ten years of incarceration, where the trial court made sufficient findings to support the sentence, and did not give undue weight to the Sentencing Guidelines.

# ARGUMENT

## I.  The Delay Between Appellant's Arraignment and Trial Violated Neither the Speedy Trial Act, Nor the Sixth Amendment.

### A.  Speedy Trial Act Claims

Appellant asserts that his trial did not commence within the 70-day-deadline established by the Speedy Trial Act (Brief of Appellant at 10-15). Fewer than 70-days of non-excluded time passed between appellant's arraignment and trial, so there was no Speedy Trial Act ("STA") violation. Further, appellant has waived any STA claims arising after the trial court denied his renewed motion to dismiss the indictment pursuant to the STA.

#### 1.  Proceedings Predating Appellant's Final Renewed Motion to Dismiss the Indictment Pursuant to the Speedy Trial Act.

Appellant was arraigned on February 3, 2009, triggering the Speedy Trial Act, 18 U.S.C. § 3161 (J.A. 27). At arraignment, the government orally moved to detain appellant, and a detention hearing was set for February 5, 2009 (*id.* at 28). The parties appeared for the detention hearing on February 5, 2009; appellant was ordered detained

11

pending trial (*id.* at 37).[3] On March 3, 2009, the parties appeared before Judge Leon for a status hearing; there was no request to toll the STA (*id.* at 42). On March 25, 2009, the parties appeared for a status hearing and indicated they were exchanging discovery materials and exploring the possibility of a plea (*id.* at 50). Judge Leon tolled the STA without objection until May 15, 2009, in the interest of justice, to facilitate discovery and plea discussions (*id.* at 51). Judge Leon granted a similar unopposed STA extension on May, 15, 2009, tolling the STA until a June 19, 2009, status hearing (*id.* at 57). Appellant filed a motion to continue this hearing, and agreed to an additional STA extension until June 24, 2009, because the parties were still discussing a plea. (*id.* at 59-60).[4]

---

[3] The government sought, and the court granted, a retroactive waiver of the Speedy Trial Act because it had taken nearly 70 days to transport appellant from the place of his arrest, the State of West Virginia, to Washington, D.C. Such a request was unnecessary, because appellant's speedy trial rights did not begin to run until appellant's first appearance before a judicial officer in this case. 18 U.S.C. § 3161(c)(1).

[4] At the ensuing hearing on June 24, 2009, the court agreed that this delay of five days was properly tolled under the STA in the interests of justice because the parties were continuing plea negotiations (J.A. at 73).

On June 24, 2009, the parties appeared for status and announced that appellant was not prepared to accept the government's plea offer (J.A. 64). The government agreed, however, it would keep the plea offer open until July 17, 2009, which is the same date the court set for the filing of motions (*id.* at 64-66). During this hearing, appellant stated he had mailed *pro se* motions to the court, including a bond review motion (*id.* at 68). The court stated it had not received the pleadings (*id.* at 69). Without objection, the court tolled the STA in the interests of justice until July 17, 2009 (*id.* at 73-74). Judge Leon noted that the parties were still in plea negotiations, and that *pro se* motions had been filed by appellant (*id.* at 74). [5]

The parties appeared before Judge Leon on July 24, 2009.[6] Appellant announced he was not interested in accepting a plea offer (J.A. 80). Appellant agreed to toll additional time under the STA until

---

[5] It appears from the docket entries that on June 29, 2009, the trial court denied leave to file appellant's *pro se* pleadings (J.A. at 6).

[6] There is no information in the record regarding the change of status date from July 17, 2009, to July 24, 2009. On July16, 2009, appellant filed a joint motion to extend the deadline for filing motions in which appellant consented to excluding additional time under the STA because a plea offer was still outstanding (J.A. at 76-77).

September 11, 2009, so the parties could prepare and file motions (*id.* at 82). The court agreed that the interests of justice were served by setting aside additional time under the STA (*id.* at 82-83).

On September 11, 2009, the government filed motions to introduce other crimes evidence pursuant to Federal Rule of Evidence 404(b), and evidence of prior convictions pursuant to Federal Rule of Evidence 609 (J.A. 87, 96). The defense filed oppositions to these motions on September 25, 2009 (*id.* at 106, 111). During a status hearing on September 25, 2009, the parties agreed to a trial date of February 22, 2010 (*id.* at 103). There were no requests to exclude additional time under the STA. Before the trial date, the government extended a new plea offer to appellant, prompting the parties to file a joint motion to continue the trial date (*id.* at 117).

On February 16, 2010, the parties appeared for a status hearing. Appellant agreed to exclude additional time under the STA while they considered the government's plea offer (J.A. 121). Judge Leon found that the exclusion of additional time was in the interests of justice as the parties continued to try to resolve the case and excluded time under

the STA until the next scheduled hearing date of March 22, 2009 (*id.* at 123).

Before the status date, appellant notified the court that he wanted new trial counsel (J.A. 126-27). On March 18, 2010, Judge Leon granted appellant's request to appoint new counsel (*id.* at 128). The government agreed to leave the plea offer open until new counsel had an opportunity to discuss the plea offer with appellant (*id.* at 129).[7]

On March 30, 2010, the parties appeared before Judge Leon, including new counsel for appellant, Pleasant Broadnax, Esq. The trial court set a new trial date of May 24, 2010, and noted its concern about getting the case to trial in the spring because of a heavy trial schedule during the summer (J.A. 172-73). When the government sought to exclude additional time under the STA, Judge Leon noted that motions were still pending, and he did not make any additional findings on the record (*id.* at 177). The parties also appeared for a brief status hearing on April 12, 2010; there was no discussion of the STA (*id.* at 180-85).

_____

[7] On March 22, 2010, and March 24, 2010, appellant filed two pro se motions to dismiss the indictment (134, 154). The court did not require the government to respond to these motions until appellant's new trial counsel decided to pursue them (J.A. at 177).

On April 22, 2010, Mr. Broadnax announced his intent to file a motion alleging a violation of the STA (J.A. 188). At the same time, Mr. Broadnax stated he wanted to vacate the trial date (*id.*). The trial court denied the request and informed counsel that unless there was a good reason, the case would go to trial on May 24, 2010 (*id.* at 189). Mr. Broadnax informed the judge that he had a trial conflict that would interfere with his ability to file pretrial motions and to prepare for trial (*id.* at 189-190). Judge Leon ordered Mr. Broadnax to ask that another lawyer be appointed for appellant so the case could proceed to trial at the end of May (*id.* at 195). The following day, appellant's third attorney, Jonathon Zucker, Esq., entered his appearance on appellant's behalf (*id.* at 200). Mr. Zucker stated he would be ready to try the case on May 24, 2010 (*id.*). Judge Leon emphasized that he had a busy trial schedule and that appellant's case needed to get to trial (*id.* at 205).

On April 29, 2010, appellant filed a motion to dismiss the indictment, claiming that the STA had been violated (J.A. 207). The government opposed this motion (*id.* at 216).

On May 14, 2010, after reviewing the pleadings and the docket, Judge Leon denied appellant's STA motion (J.A. 235). Judge Leon found

16

that the tolling of the statute he had approved was consistent with existing case law and the statute itself (*id.*). The trial court scheduled a hearing on the government's 404(b) motion for May 18, 2010, and informed the parties if there was no plea before the hearing, the case would go to trial as scheduled on May 25, 2010. Judge Leon also advised the government to be prepared to respond orally to appellant's *pro se* motions filed on March 22, and March 24, 2010 (*id.* at 235-37).

On May 18, 2010, Judge Leon presided over a hearing on the government's motion to admit 404(b) evidence (J.A. 242). The court denied the government's request to admit 404(b) evidence (*id.* at 254-55). The parties discussed jury selection and other pretrial matters in preparation for trial on May 25, 2010 (*id.* at 258-265). In addition, appellant filed a pro se motion to reconsider the denial of his STA motion (*id.* at 257, 266). The government filed a written opposition to appellant's motion to reconsider on May 20, 2010 (*id.* at 280).[8]

On May 20, 2010, the government also filed a motion *in limine* to admit intrinsic evidence, and a motion *in limine* to permit jurors to use

---

[8] On May 20, 2010, the government also filed a superseding indictment that listed appellant by the nickname "Tap" (J.A at 284).

17

transcripts of the undercover recordings during their deliberations (J.A. 285, S.A.).

On May 24, 2010, appellant filed an opposition to the government's motion to admit intrinsic evidence (J.A. 290). On May 24, 2010, the trial court also denied appellant's motion to reconsider the denial of his STA motion (*id.* at 11).

On May 24, 2010, Mr. Zucker filed a motion raising concerns about appellant's mental health, and requesting a continuance so appellant could undergo a mental health evaluation (J.A. 297).

On the morning of May 25, 2010, the government was ready for trial, and a jury panel was available (J.A. 302). In appellant's presence, Judge Leon informed appellant that to obtain a mental health evaluation he would have to delay the trial for at least 90 days so appellant could be sent to a federal facility for evaluation (*id.* at 306-07). Appellant agreed to the continuance, stating "I personally don't have any problems with this and I don't object to it. There could very well be something going on that I am not aware, okay, that I can't really feed any more into it, your Honor." (*Id.* at 308.) The government did not oppose appellant's request (*id.* at 310). Judge Leon granted appellant's

motion to continue the trial and issued an Order to have appellant evaluated at the government's federal facility in Butner, North Carolina (*id.* at 310). The government raised the issue of the STA and noted that the government's two motions *in limine* remained outstanding (*id.* at 313). Judge Leon found that tolling of the STA was appropriate during the pendency of appellant's psychological evaluation, and that tolling was also appropriate because the government had motions pending (*id.* at 314).[9]

The parties reconvened on October 22, 2010. At the outset government counsel stated that there were two motions that were outstanding that the government believed were tolling the STA (J.A. 332). The court responded "Absolutely. Why wouldn't they be." (*Id.* at 332.)  Appellant did not offer any argument. The parties set a trial date of January 24, 2011, and left open the possibility of an earlier date to resolve the government's motion to admit intrinsic evidence (*id.* at 336-37). At the conclusion of the hearing, Judge Leon held that the STA was

---

[9] Judge Leon agreed with defense counsel that any tolling because of government motions was moot in light of appellant's continuance for a mental health evaluation (J.A. at 314).

being tolled because of the government's outstanding motions; appellant did not object (*id.* at 339).

On January 10, 2011, the parties appeared before Judge Leon and appellant once again moved to dismiss the indictment pursuant to the STA (J.A. 342). The trial court denied this request, noting there was no basis to grant the motion (*id.* at 343). Judge Leon also inquired of appellant if he wished to proceed with Mr. Zucker as his attorney, and appellant refused to answer (*id.* at 343).[10]

On January 18, 2011, Judge Leon, held a hearing to address the potential admissibility of 404(b) evidence if appellant took the stand, or made certain arguments, at trial (J.A. 348).[11] The parties also addressed the government's motion to admit intrinsic evidence, which the court granted in part (*id.* at 373-74). During this hearing, Mr. Zucker, stated that appellant had just informed him that he had

---

[10] Judge Leon instructed appellant that if he did not offer any information to the court, the court would proceed on the assumption that Mr. Zucker would represent appellant at trial (J.A. 343-44). Appellant simply shrugged his shoulders (*id.* at 344).

[11] This hearing appears to have been prompted by a discussion of the issue during an unrecorded pre-trial conference (J.A. 344, 348).

retained new counsel, James Rudasill, Esq. (*id.* at 349-50).[12] The court stated that it expected to go forward with trial with current counsel on January 24, 2011 (*id.* at 378). Mr. Zucker also stated "my client has asked that I renew and I will submit on the Speedy Trial Motion again" (*id.* at 351). There was no additional discussion of the STA issue. This was the last time appellant renewed his motion to dismiss the indictment pursuant to the STA.

## 2. Proceedings After Appellant's Final Renewed Motion to Dismiss the Indictment Pursuant to the Speedy Trial Act.

On January 24, 2011, the government was once again ready for trial (J.A. 390). Before trial, however, the court received a letter from appellant stating he would not go to trial with Mr. Zucker as his lawyer, and requesting that the court reinstate Mr. Broadnax as his attorney (*id.* at 384-85). Based on the circumstances, the court found that its only choice was to see if either Mr. Broadnax or Mr. Rudasill could "try this case in the near future" (*id.* at 387). The court expressed its hope that

---

[12] Mr. Rudasill called chambers after the hearing to inform the court that he had spoken with appellant, but he had not been retained by him (J.A. 382-83).

Mr. Rudasill could try the case that week (*id.* at 391), and that it was frustrated by the inability to get the case to trial (*id.* at 395). The court reconvened with Mr. Broadnax and Mr. Rudasill both present. The court's plan to try the case the week of January 24, 2011, had dissipated. Citing the need to review all of the undercover tapes and transcripts, Judge Leon stated his belief that Mr. Rudasill could start the case within a month (*id.* at 403). Both Mr. Rudasill and the government stated they could be ready for trial on February 14, 2011 (*id.* at 404).[13] The court set the matter for trial on February 14, 2011. Neither the parties, nor the court, addressed the STA.

On February 14, 2011, appellant's trial commenced. Appellant did not renew his motion to dismiss the indictment for a failure to comply with the STA before starting trial (J.A. at 409).

The trial court did not resolve the government's motion to provide transcripts to the jury before trial, and delayed ruling on the issue (J.A. 708). On February 17, 2011, during a discussion of jury instructions, the court heard argument regarding the government's motion to provide

---

[13] Mr. Broadnax was excused because he had a scheduling conflict (J.A. at 404).

transcripts to the jury (*id.* at 860-864). The government raised the issue again, and appellant indicated he would not object to having one copy of the transcripts go back to the jury room (*id.* at 876-878). Judge Leon granted the government's motion in part by allowing the jury to have two copies of the transcripts to review during their deliberations (*id.* at 901-02).

## B.    Standard of Review

This court reviews challenges to the Speedy Trial Act, 18 U.S.C. § 3161, *de novo* on questions of law and for clear error regarding the trial court's findings of fact. *United States v. Rice,* 746 F.3d 1074, 1077 (D.C. Cir. 2014); *United States v. Van Smith,* 530 F.3d 967, 969 (D.C. Cir. 2008). The STA provides that a trial must commence within 70-days from the later of the filing of the indictment or the defendant's first court appearance. 18 U.S.C. § 3161(c)(1). The STA automatically excludes certain periods of pretrial delay from its 70-day limit. *See* 18 U.S.C. § 3161(h) ("The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence"); *Van Smith,* 530 F.3d at 969.

23

For example, 18 U.S.C. § 3161(h)(1)(D) automatically excludes from the 70-day period "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." If the trial court holds a hearing on the motion, the STA "excludes the period of time between the filing of the motion and the conclusion of the hearing, whether or not the amount of delay that occurred was 'reasonable.'" *Rice,* 746 F.3d at 1080 (*quoting Henderson v. United States,* 476 U.S. 321, 326 (1986)).

When this Court examines a challenge to the STA, it does not examine the entire passage of time from arrest or arraignment until trial, rather, this Court's "review is limited to examining the particular periods of time that [appellant] alleges" were not properly excluded by the STA. *Rice*, 746 F.3d at 1077-78; *see also Zedner v. United States,* 547 U.S. 489, 502-03 (2006); 18 U.S.C. § 3162(a)(2).

Further, if appellant fails to challenge an alleged violation of the STA before trial, he is deemed to have waived his right to dismissal. 18 U.S.C. § 3162(a)(2). *See also United States v. Hines*, 694 F.3d 112, 120 (D.C. Cir. 2012) (finding waiver of right to challenge on STA grounds applies to delays in both indictment and trial); *United States v.*

24

*McNeil,* 911 F.2d 768, 772 (D.C. Cir. 1990) (noting waiver may be appropriate, but refusing to apply waiver where government did not pursue waiver issue on appeal). Where appellant moves for dismissal pursuant to the STA before trial, but fails to renew the motion after the passage of additional time before trial, appellant waives his right to challenge any delay arising between the denial of his motion to dismiss, and the commencement of trial. *See e.g., United States v. Gates*, 709 F.3d 58, 67 (1st Cir. 2013) ("appellant who seeks to contest the exclusion of periods of time not challenged in the district court has waived his right to challenge such periods on appeal.").

### C.    Argument

#### 1.    The Non-Excluded Days Identified by Appellant That Pre-date his Final Motion to Dismiss That was Made on January 18, 2011, do not Exceed 70-Days.

Appellant's final oral motion renewing his motion to dismiss the indictment for a violation of the STA occurred on January 18, 2011 (J.A. 351). Appellant cites four periods of time before January 18, 2011, which he alleges were not properly excluded under the STA: February

25

3, 2009 - March 25, 2009; September 11, 2009 - September 25, 2009; October 26, 2009 - January 27, 2010; and May 14, 2010 - May 25, 2010.

### a.  February 3 – March 25, 2009 (50 Days)

Appellee agrees that 48 days of non-excluded time passed during these dates (Brief of Appellant at 11-12). In his written STA motion, appellant only alleged that the period of time from March 3-25, 2009, was not properly excluded (J.A. 210). The government's response to appellant's STA motion went beyond appellant's claim, stating "the government believes that the 50 days from February 3, 2009, to March 25, 2009, were not excludable under the STA." (*id.* at 226).[14] This concession was improvident, as the two days that passed between the government's oral motion for detention on February 3, 2009, and the detention hearing on February 5, 2009, were properly excludable pursuant to 18 U.S.C. § 3161(h)(1)(D). *United States v. Ferguson,* 565 F.

---

[14] Because appellant failed to argue the period from February 3, 2009, to March 3, 2009, was excluded, this portion of appellant's claim is arguably waived or subject to plain error review. However, as noted, the government's response addressed the entire time period.

26

Supp. 2d 32, 40 (D.D.C. 2008). Thus, only 48-days of non-excludable time passed from February 3, 2009, until March 25, 2009.[15]

### b.    September 11-25, 2009 (14 Days).

Appellee agrees that the 14-days that passed between the filing of the government's motion to admit evidence pursuant to Fed. R. Evid. 404(b) and 609 on September 11, 2009, and the filing of appellant's opposition to those motions on September 25, 2009, were not excluded under the STA. *United States v. Harris,* 491 F.3d 440, 443-44 (D.C. Cir. 2007).

### c.    October 26, 2009, to January 27, 2010 (93 Days).

On September 25, 2009, appellant filed an opposition to the government's motion to admit other crimes evidence (J.A. 106). On May 18, 2010, the court held a hearing on the government's motion to admit other crimes evidence (*id.* at 240-257). The same day the court ruled that the government would not be permitted to use the 404(b) evidence in its case in chief (*id.* at 255-57). Pursuant to 18 U.S.C. § 3161(h)(1)(D),

---

[15] To the extent that the government is bound by its pleading in the trial court, the difference of two days is inconsequential because, even including these two days, there was no violation of the STA.

because the trial court held a hearing on the government's opposed motion to introduce other crimes evidence, the STA clock was tolled during the pendency of the opposed motion from September 25, 2009, until May 18, 2010. *Rice,* 746 F.3d at 1080. Accordingly, all of the days from October 26, 2009, to January 27, 2010, were automatically excluded under the STA.[16]

### d.    May 14-25, 2010 (12 Days).

As discussed above, the period of time from September 25, 2009, to May 18, 2010, was excluded from the STA due to the pendency of the government's opposed motion to admit 404(b) evidence. Accordingly, the days from May 14-18, 2010, were automatically excluded under the STA.

On May 18, 2010, appellant filed a *pro se* motion to reconsider the court's denial of his motion to dismiss the indictment for violating the

---

[16] Appellant argued that this 93-period was not excluded because a hearing on the government's motion was not required, limiting the excludable time to 30-days (Brief of Appellant at 13-14). After appellant filed his brief, this Court issued its decision in *Rice*, holding that the entire period of time between the filing of motions and a hearing on that motion is properly excluded under the STA.

28

STA (J.A. 266).[17] On May 20, 2010, the government filed an opposition to appellant's *pro se* motion to reconsider (*id.* at 280). On May 24, 2010, the trial court entered a minute order denying appellant's *pro se* motion to reconsider (*id.* at 11). Accordingly, the days from May 18, 2010, to May 24, 2010, were excluded from the STA due to the pendency of appellant's *pro se* motion to reconsider, and the court's consideration of that motion. *Van Smith*, 530 F.3d at 969; 18 U.S.C. § 3161(h)(1)(H).

On May 24, 2010, appellant filed two additional motions, an opposition to the government's motion *in limine* to introduce intrinsic evidence,[18] and a motion to continue the trial date due to appellant's potential mental health issues (J.A. 290, 296). Appellant's opposition to the government's motion *in limine* to admit intrinsic evidence tolled the STA clock until it was resolved at a hearing on January 18, 2011. 18 U.S.C. § 3161(h)(1)(D); *Rice,* 746 F.3d at 1080. Therefore, the time from May 24-25, 2010, is also automatically excluded under the STA.

---

[17] On May 14, 2010, the trial court denied appellant's first motion pursuant to the STA that was filed by counsel (J.A. 235).

[18] The government filed this motion *in limine* on May 21, 2010 (J.A. 285).

Accordingly, every day from May 14-25, 2010, was automatically excluded under the STA.

As set forth above, at most, 64-days of non-excluded time passed between appellant's arraignment on February 3, 2009, and May 25, 2010.

> **2.    Appellant has Waived his Right to Seek Dismissal Under the Speedy Trial Act for any Delays Occurring After January 18, 2011.**

Appellant's brief does not identify any additional periods of non-excluded time between May 25, 2010, and January 18, 2011 (Brief of Appellant at 11-15). On January 18, 2011, appellant's counsel stated "my client has asked that I renew and I will submit on the Speedy Trial Motion again." (J.A. 351). There was no substantive discussion of the STA issue (*id.*). While the trial court did not make an explicit ruling on the orally renewed motion, Judge Leon implicitly denied the motion by repeatedly stating that trial would go forward the following Monday, January 24, 2011. Appellant did not renew his STA motion before trial finally commenced on February 14, 2011.

In support of his request to dismiss the indictment on appeal, appellant argues for the first time that the passage of 28-days from January 18, 2011, until February 14, 2011, was not excluded under the STA (Brief of Appellant at 15). Appellant did file a motion to dismiss the indictment on STA grounds; he renewed that motion to dismiss for the last time on January 18, 2011; and that motion was implicitly denied the same day when the court ruled that the trial would proceed as scheduled. By failing to renew his motion before trial commenced on February 14, 2011, appellant waived any STA claim arising from the passage of time between January 18, 2011, and February 14, 2011. *See United States v. Gates*, 709 F.3d 58, 67 (1st Cir. 2013) ("appellant who seeks to contest the exclusion of periods of time not challenged in the district court has waived his right to challenge such periods on appeal"); *United States v. LaGasse*, 269 Fed. Appx. 87, 89 (2nd Cir. 2008) (ten days of non-excluded time that passed between denial of STA motion and trial not subject to review where appellant failed to renew his STA motion before trial); *United States v. Payton*, 257 Fed. Appx. 879, 881 (6th Cir. 2007) (*citing United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991) (date appellant files his STA motion marks the endpoint for the

31

STA calculation and subsequent periods of delay are inconsequential));

*Wirsing v. United States*, 867 F.2d 1227, 1230 (9th Cir. 1989) ("right to challenge any subsequent delay [under the STA] is waived absent the bringing of a new motion to dismiss."); *accord United States v. Mathis*, 96 F.3d 1577, 1579 (11th Cir. 1996); *United States v. Mayes*, 917 F.2d 457, 460 (10th Cir. 1990).[19]

---

[19] Appellant's failure to raise an STA claim at trial for the period from January 18, 2011, until February 14, 2011, arguably acts as an absolute bar to appellate review, precluding even plain-error review. *See United States v. Mosteller*, 741 F.3d 503, 507-08 (4th Cir. 2014) ("because Section 3162(a)(2) specifies that such a 'waiver' occurs when a defendant fails to timely assert a Speedy Trial Act violation in the district court, we are not permitted to conduct any appellate review, for plain error or otherwise, of [appellant's STA] claim."). In its decision, the Fourth Circuit noted that its ruling was consistent with rulings from the First, Second, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuit Courts of Appeal. *Id.* at 508-509 (listing cases). *But see United States v. Carasco*, 257 F.3d 1045, 1050-53 (9th Cir. 2001) (applying plain error, without discussing the existence of the waiver provisions of § 3162(a)(2)); and compare with *United States v. Mondragon-Hernandez,* 546 Fed. Appx. 693 (9th Cir. 2013) (subsequent Ninth Circuit case finding appellant waived STA claims under §3162(a)(2) without applying plain error analysis).

This Court has not directly decided whether a failure to assert an STA claim before trial acts as a bar to appellate review, although this Court previously identified complete waiver as a possibility where an appellant has failed to comply with § 3162(a)(2) which requires a defendant to move to dismiss for an STA violation before trial. *See Rice,* 746 F.3d at 1077 n.* (noting government had not asserted waiver or

(continued . . . )

Applying a waiver to the unpreserved period of time from January 18, 2011, until February 14, 2011, is consistent with this Court's application of the waiver provisions of 18 U.S.C. § 3162(a)(2) in *Hines*, supra pp. 32 n.19, and the weight of authority from other Courts of Appeal. As such, this Court should hold that appellant has waived appellate review for any violation of the STA arising from the passage of time from January 18, 2011, until February 14, 2011.[20]

---

(. . . continued)

forfeiture claims in its brief)*; United States v. Taylor*, 497 F.3d 673, 676 n.3 (D.C. Cir 2007) (not reaching the issue because result would be the same under waiver or plain error). But in *United States v. Hines*, 694 F.3d 112 (D.C. Cir. 2012), this Court denied an unpreserved STA claim without undertaking any plain error analysis. Consistent with § 3162(a)(1), this Court declined to "decide the propriety of the two continuances because, under 18 U.S.C. § 3162(a)(2), Hines waived his right to dismissal by failing to move to dismiss the indictment before his trial commenced." *Hines*, 694 F.3d at 117.

[20] This delay was created by appellant's eleventh-hour request for new counsel, and the sole purpose of the delay was to allow Mr. Rudasill time to review the evidence so that he could effectively represent appellant at trial (J.A. 403).

### 3. Even if Appellant has not Waived his Right to Challenge the Passage of Time from January 11, 2011, to February 14, 2011, That Time was Automatically Excluded by a Pending Motion.

On May 20, 2010, the government filed a motion *in limine* to permit jurors to use transcripts of undercover recordings during their deliberations (S.A.). This motion remained outstanding until the trial court resolved the motion on February 17, 2011, near the end of appellant's trial (J.A. 860-64). The government raised the pending motions *in limine* during previous discussions regarding the STA (*id.* at 332). Without objection from appellant, the trial court agreed that the government's motions were tolling the STA (*id.* at 332). Further, at trial, appellant did not consent to the government's motion *in limine*, and the trial court ultimately only permitted the jurors to have two copies of the transcripts (*id.* at 901). Because this motion remained outstanding from May 20, 2010, until February 17, 2011, the STA clock was still tolled from January 18, 2011, until the commencement of trial on February 14, 2011. 18 U.S.C. § 3161(h)(1)(D); *Rice,* 746 F.3d at 1080.

As discussed above, at most 64 days of non-excluded time passed between appellant's first appearance on February 3, 2009, and the

34

commencement of trial on February 14, 2011. Accordingly, there was no STA violation.

## II.   The Passage of Time between Appellant's Arrest and Trial did not Violate the Sixth Amendment.

Appellant also claims that the delay between his arrest and trial violated his rights to a speedy trial pursuant to the Sixth Amendment (Brief of Appellant at 15-20). Appellant did not articulate this argument before trial; therefore, his claim is subject to review for plain-error. Even if appellant preserved this issue on appeal, a review of the record reveals that there was no violation of the Sixth Amendment as the delay between appellant's arrest and trial was largely the result of delays caused, or consented to, by appellant.

### A.   Background

On April 29, 2010, appellant, through counsel, filed a "Motion to Dismiss the Indictment For Speedy Trial Act Violation" (J.A. 207). This pleading focused exclusively on the alleged statutory violation of the STA, and did not advance any constitutional claims under the Sixth Amendment (*id.* at 207-209). The government opposed appellant's

motion, responding to his statutory claims (*id.* at 216). Judge Leon denied appellant's motion on May 14, 2010 (*id.* at 235).

On May 18, 2010, appellant filed a *pro se* motion entitled "Motion for Reconsideration and Memorandum Point in Support of Defense Motion to Dismiss Indictment for Violation of the Speedy Trial Act 18 USCS 3161(c) with Prejudice" (J.A. 266). While this pleading used the term "Sixth Amendment" (*id.* at 266, 267, 278), all of the arguments in this motion to reconsider focused on alleged statutory violations of the STA (*id.* at 266-279). The government filed an opposition to this *pro se* motion, focusing exclusively on the alleged violations of the STA (*id.* at 280-83). On May 24, 2010, Judge Leon denied the motion to reconsider (*id.* at 11).

## B.    Standard of Review

Appellant's failure to raise a constitutional speedy-trial claim before the district court subjects his constitutional claim to review for plain-error. *See United States v. Rice,* 746 F.3d 1074, 1081 (D.C. 2014) (STA "claims do not on their own preserve a constitutional claim to a speedy trial"); *accord United States v. Green,* 516 Fed. Appx. 113 (3rd Cir. 2013); *United States v. O'Connor,* 656 F.3d 630, 643 (7th Cir. 2011);

36

*United States v. Abad,* 514 F.3d 271, 274 (2nd Cir. 2008); *United States v. Gearhart,* 576 F.3d 459, 462-63 (7th Cir. 2009); *United States v. Serna-Villarreal,* 352 F.3d 225, 231 (5th Cir. 2003); *United States v. Gomez,* 67 F.3d 1515, 1521 (10th Cir. 1995).[21] In any event, because there was no error, let alone plain error, this Court can affirm the district court's judgment regardless of the standard of review.

## C.   Argument

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. *United States v. Tchibassa,* 452 F.3d 918, 922 (D.C. Cir. 2006). In *Barker v. Wingo,* 407 U.S. 514 (1972), the Supreme Court established a four-factor test to determine whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. In applying these factors, this Court has emphasized that none of the factors "is either a

---

[21] To prevail under the demanding plain-error standard, appellant must show that the district court made: (1) a legal error; that was (2) plain or obvious; that (3) affected his substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano,* 507 U.S. 725, 733-737 (1993).

necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant." *United States v. Lopesierra-Gutierrez,* 708 F.3d 193, 203 (D.C. Cir.), *cert. denied* 134 S.Ct. 330 (2013) (quoting *Tchibassa,* 452 F.3d at 923). There was no violation of the STA, and this Court has observed, "it will be an unusual case in which the Act is followed but the Constitution violated." *Rice*, 746 F.3d at 1081 (internal quotations and citations omitted).

### 1.     Length of delay

As to the first factor, appellant was arrested on November 26, 2008 (J.A. 3), and trial commenced on February 14, 2011 (*id.* at 15). Although the total delay exceeded one year, and thus was "presumptively prejudicial," *see Doggett v. United States,* 505 U.S. 647, 651-52 & n.1 (1992), the delay in this case "was considerably shorter than delays tolerated in prior cases*." Lopesierra-Gutierrez,* 708 F.3d at 203 (citing *Tchibassa,* 452 F.3d at 927, where there was no constitutional violation despite 11-year delay). Indeed, in *Lopesierra-*

*Gutierrez*, which involved a delay of three-and-a-half years, this Court found no constitutional violation. *Id.*

## 2.    Reason for Delay

The second *Barker* factor weighs against appellant's claim. A review of the record reveals that but for the delay in transporting appellant to the District of Columbia, and the court's unavailability in December of 2010, appellant joined in, or requested most of the continuances that extended the trial date. Following appellant's arrest on November 8, 2008, appellant was not transported to the District of Columba for nearly 70-days due to transportation issues with the United States Marshals Service; a delay clearly attributable to the government.

Between February 5, 2009, and July 24, 2009, the case was continued, without objection from appellant, as the parties completed discovery and engaged in plea negotiations (J.A. 43, 49-50, 56-57, 59, 73, 76).[22] On July 24, 2009, appellant stated he was no longer interested

---

[22] At the February 5, 2009, detention hearing appellant did oppose a retroactive interest of justice extension of 80-days to cover the delay in bringing appellant to the District of Columbia (J.A. 38-40).

in a plea offer, but agreed to extend the time for the filing of motions until September 11, 2009 (*id.* at 82). The parties appeared for another status on September 25, 2009, and agreed to a trial date of February 22, 2010 (*id.* at 102-04). The continuances from February 5, 2009, until September 25, 2009, were not attributable solely to the government, and were the result of joint efforts to complete discovery, prepare motions, and resolve the case short of trial.[23]

On February 10, 2010, the parties filed a joint motion to continue the trial date for a week or two so appellant's counsel could present a revised plea offer to appellant (J.A 117). On February 16, 2010, citing her trial schedule and inclement weather, appellant's trial counsel moved to vacate the trial date, and set a new status date in March, so appellant could consider the government's revised plea offer (*id.* at 121-22). The continuances from September 25, 2009, to March 18, 2010,

---

[23] In his brief, appellant asserts that he objected to waiving time under the STA during the March 3, 2009, status hearing (Brief of Appellant at 17). The transcript reveals that, post-*Zedner*, appellant's counsel was opposed to using the term "waiver" because appellant could not legally waive the STA. Appellant's counsel did not oppose the continuances themselves, often inviting the court to make appropriate findings on the record to support the continuance (J.A. 44, 50, 56).

were all expressly agreed to by appellant as he and his attorney continued to explore their plea options and to prepare for trial.

On or about March 18, 2010, appellant requested new trial counsel (J.A 126-27). This created a delay, attributable solely to appellant, while the court secured new defense counsel for appellant. On March 30, 2010, Mr. Broadnax entered his appearance as appellant's attorney, and the parties scheduled a tentative trial date of May 24, 2010 (*id.* at 170-171). Mr. Broadnax had to withdraw, because he could not try the case at the end of May, but appellant's third attorney, Mr. Zucker, was available to try the case during the week of May 24, 2010 (*id.* at 200).

The government was ready for trial on May 25, 2010. However, on the eve of trial, appellant moved to vacate the trial date and continue the trial so that he could obtain a mental health evaluation (J.A. 296). This created a delay of over four months, while appellant underwent a mental health evaluation, and the court considered the findings of the medical staff members who had evaluated appellant at a hearing on October 22, 2010 (*id.* at 321, 330-33). This delay from March 18, 2010, until October 22, 2010, is attributable to appellant.

41

At the October 22, 2010, hearing, Mr. Zucker stated that he could try the case during the week of December 6, 2010, but the court was unavailable, so the parties set a trial date of January 24, 2011 (J.A 336-38). Delays as a result of court unavailability are attributable to the government. *Barker,* 407 U.S. at 531.

On January 24, 2011, the government was once again ready for trial (J.A. 390). Once again, on the eve of trial, appellant caused a delay, this time stating he was unwilling to go to trial with Mr. Zucker as his attorney (*id*. at 385). This created an additional delay, attributable solely to appellant, while appellant's fourth court-appointed attorney prepared for trial. Trial finally commenced on February 14, 2011.

Thus, with the exception of the delay in transporting appellant to the jurisdiction, and the delay as the result of the court's unavailability to try the case in December of 2010, appellant joined in, consented to, or created the continuances that extended the time from arrest to trial in this case. As such, the second prong of the *Barker* test weighs heavily against him.

42

### 3.    Appellant's assertion of his right.

Appellant waited until April 29, 2010, a full 17-months after his arrest, and more than 14-months after his arraignment, to file his first motion challenging the STA. This weighs heavily against appellant. *Rice,* 746 F,3d at 1082 (delay of nearly one year between arraignment and STA challenge "cuts decidedly against" appellant). Further, in his initial motion, and his *pro* se motion for reconsideration, appellant did not advance any specific constitutional claims.

### 4.    Prejudice

Finally, appellant provides only conclusory claims of prejudice, without citing any example of how his defense was prejudiced by the delay (Brief of Appellant at 18-20). The lack of such identifiable prejudice further tips the *Barker* scale against appellant. *See Lopesierra-Gutierrez,* 708 F.3d at 203 (rejecting constitutional speedy-trial claim where defendant offered no "reason to believe that the delay actually prejudiced his defense.").

Applying all of the *Barker* factors to this case, it is clear there was no violation of the Sixth Amendment. The trial court did not commit

43

plain error by failing *sua sponte* to dismiss the indictment for a violation of the appellant's constitutional right to a speedy trial.

## III. The Evidence of Interstate Commerce was Sufficient to Support Appellant's Conviction

### A.    Standard of Review

This Court reviews the denial of a motion for judgment of acquittal *de novo*, "considering the evidence in the light most favorable to the government and determining whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Laureys,* 653 F.3d 27, 31 (D.C. Cir. 2011) (*quoting United States v. Kayode,* 254 F.3d 204, 212 (D.C. Cir. 2001)). In making the sufficiency determination, this Court "draw[s] no distinction between direct and circumstantial evidence, and giv[es] full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Gaskins,* 690 F.3d 569, 576 (D.C. Cir. 2012) (*quoting United States v. Branham,* 515 F.3d 1268, 1273 (D.C. Cir. 2008)) (internal quotation marks omitted).

## B.    Background

Appellant argues that the evidence supporting his conviction was insufficient because the government manufactured the interstate commerce element of the offense (Brief of Appellant at 20-26).

The applicable federal murder-for-hire statute provides:

(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; . . .

(b) As used in this section and section 1959— . . .

    (2) "facility of interstate or foreign commerce" includes means of transportation and communication;  . . .

18 U.S.C. § 1958(a) (2004).

The government satisfied the interstate commerce element by establishing: 1) appellant provided his cell phone number to Thomas, and used his cell phone to further the plan to kill Ms. Buck (J.A. 550-551); 2) Thomas spoke to appellant by phone on November 22, 2008, while Thomas was in Maryland and appellant was in West Virginia (*id.*

45

at 753-54); and 3) appellant travelled from Maryland to Washington, D.C. to meet the individual who he believed was going to kill Ms. Buck (*id*. at 745-46).

## C.   Argument

Appellant argues that the government's evidence at trial was insufficient because the only evidence that appellant used a facility of interstate commerce was manufactured by the government. The flaw in appellant's argument is that the government had no need to manufacture jurisdiction, because appellant's use of his cell phone to further the plan to kill Ms. Buck, standing alone, satisfied that element. Citing *United States v. Coates*, 949 F.2d 104 (4th Cir. 1991), appellant argues that appellant's use of his cell phone to further the plan to kill Ms. Buck was insufficient because appellant used his phone while he remained in Maryland and as such appellant did not "enter into" interstate commerce (Brief of Appellant at 24).

In *Coates,* the Fourth Circuit found there was no federal jurisdiction in a murder-for-hire case where the undercover officer crossed state lines and contacted Coates by phone for the sole purpose of establishing federal jurisdiction. *Coates,* 949 F.2d at 106. The statute

46

at issue in *Coates* was an earlier version of 18 U.S.C. § 1958(a) that required the use of a "facility *in* interstate or foreign commerce." In 2004, Congress amended § 1958(a) to require the use of a "facility *of* interstate or foreign commerce." *See* Pub.L. 108–458, 2004 S 2845 (2004) *(*emphasis added). The use of the term "facility in interstate or foreign commerce" in § 1958(a) had created significant confusion because § 1958(b), a definitional section, used the term "facility *of* interstate commerce." This difference created conflicting opinions on whether the purely intra-state use of an inter-state facility satisfied the interstate commerce element of the offense. *See generally United States v. Means,* 297 Fed. Appx. 755, 758-59 (10th Cir. 2008) (outlining conflicting decisions); *United States v. Marek,* 238 F.3d 310, 315-20 (5th Cir. 2001) (describing conflicting constructions); *United States v. Weathers,* 169 F.3d 336, 339-344 (6th Cir. 1999) (same).

By the time appellant provided his cell phone number to Thomas, and used his cell phone to communicate with Thomas, the government was only required to prove that appellant had used a "facility of interstate" commerce to satisfy 18 U.S.C. § 1958(a) (2004). Courts have consistently held that the use of a telephone, even when only used for

47

intra-state communications, constitutes the use of a facility of interstate commerce. *Means,* 297 Fed. Appx. at 759 n.4 ("interstate commerce element is met whenever any interstate commerce facility is used in the commission of a murder-for-hire offense, regardless of whether that use was interstate or purely intrastate in nature"); *United States v. R.J.S. Jr.,* 366 F.3d 960, 961 (8th Cir. 2004) (phone threat made from one school phone to another phone in the same building constituted use of an instrumentality of interstate commerce); *Weathers,* 169 F.3d at 341 ("It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce").

Once appellant provided his cell phone number to Thomas, and had telephone conversations with Thomas in furtherance of killing Ms. Buck, as the government established federal jurisdiction pursuant § 1958(a). Accordingly, the government had no need to "manufacture" jurisdiction as in *Coates*. The government's evidence was sufficient that appellant used a facility of interstate commerce with the intent to commit a murder-for-hire, even assuming appellant remained in Maryland.

48

There was uncontroverted evidence at trial that appellant used a facility of interstate commerce in furtherance of the plan to kill Ms. Buck: appellant used a phone to speak with Thomas about the plot to kill Ms. Buck while he was in West Virginia, and Thomas was in Maryland (J.A. 753-54).[24] Appellant has no basis to complain that the government created this interstate communication because unlike the government agent in *Coates* who crossed state lines to create federal jurisdiction, here it was appellant who crossed state lines to work in West Virginia to insure his alibi when Ms. Buck was murdered (*id.* at 815).

Moreover, it is clear that when appellant travelled from Maryland to Washington, D.C. by car to meet with the alleged hit-men, he was not lured to Washington, D.C for the sole purpose of creating federal jurisdiction. As Agent Scoggin explained, his purpose in using the stadium at RFK was two fold: 1) he wanted to see if appellant was serious about the plan to kill Ms. Buck; and 2) it was an area where, based on his prior experience, he felt comfortable setting up

---

[24] Appellant's presence in West Virginia was corroborated by his arrest in West Virginia on November 26, 2008 (J.A. 615).

surveillance (J.A. 609-610). Further, to establish federal jurisdiction, crossing the line from Maryland to Washington, D.C. was not necessary, as even the intrastate use of a vehicle in a murder-for-hire scheme constitutes the use of a facility of interstate commerce. *United States v. Mandel,* 647 F.3d 710 (7th Cir. 2011); *United States v. Thomas*, 282 Fed. Appx. 244, 246 (4th Cir. 2008).[25]

Appellant's reliance on the manufactured jurisdiction doctrine in *United States v. Archer,* 486 F.2d 670 (2nd Cir. 1973) also falls short. As this court recognized in *United States v. Rezaq*, 134 F.3d 1121, 1131 (D.C. 1998), the courts in *Archer* and *Coates* found that the government's conduct improperly interfered with the limits of federal jurisdiction by intentionally transforming an otherwise local offense into a federal crime. *Rezaq,* 134 F.3d at 1131. In this case, there was an interstate commerce component established by appellant's own conduct. Appellant provided his cell phone number (a facility of interstate commerce), to Thomas to communicate with him in furtherance of the plan to kill Ms. Buck. Further, since *Archer* was decided, the Second

---

[25] At trial appellant conceded that the use of a phone or a vehicle constitutes the use of a facility of interstate commerce (J.A. 873).

Circuit Court of Appeals has observed that courts, "have refused to follow *Archer* when there is any link between the federal element and a voluntary, affirmative act of the defendant." *United States v. Wallace*, 85 F.3d 1063, 1066 (2nd Cir. 1996). *See also United States v. Peters*, 952 F.2d 960, 963 n.6 (7th Cir. 1992) ("other circuits have also found an *Archer* defense inapplicable when the defendant freely participates in the jurisdictional act." (citing cases)). Moreover, unlike *Coates* and *Archer*, where a federal agent crossed state lines to create federal jurisdiction, here appellant voluntarily and knowingly crossed state lines in furtherance of the plot to kill Ms. Buck.

## IV. The Trial Court Properly Denied Appellant's Request to Modify the Jury Instruction on Interstate Commerce.

### A. Standard of Review

This Court reviews the decision not to provide a requested jury instruction *de novo,* but reviews the choice of language within an instruction for an abuse of discretion. *United States v. Dickerson*, 163 F.3d 639, 641 n.3 (D.C. Cir. 1999); *accord Czekalski v. LaHood,* 589 F.3d 449, 453 (D.C. Cir. 2009). Appellant concedes that abuse of discretion is the appropriate standard of review (Brief of Appellant at 26). Further,

as "a general rule, the refusal to give an instruction requested by the defendant is reversible error only if the instruction is substantively correct, not already substantially covered in other instructions given to the jury, and concerns an important point in the trial such that the failure to give it seriously impairs the defendant's ability to present effectively his defense." *United States v. Thomas,* 114 F.3d 228, 244 (D.C. Cir. 1997).

## B.    Background

On February 16, 2011, appellant filed a request to add the following language to the jury instruction regarding the interstate commerce element of the federal murder-for-hire statute:

> In reaching your decision as to whether or not the government has proven the first element beyond a reasonable doubt, you are further instructed that you should consider only such actions that you find were knowingly and intentionally undertaken by Mr. Taplet alone and *independent of the action(s) of, or assistance of* the confidential informant or any other government agent in carrying out the scheme." (J.A. 661) (emphasis in original.)

Appellant's request for this language was based on his claim of manufactured jurisdiction, once again citing *Coates* and *Archer* (J.A. 661-662).

The government opposed appellant's request because 1) the instruction was not supported by the law or the facts of the case; and 2) assuming the government had manufactured jurisdiction, the appropriate remedy was dismissal of the indictment for a lack of jurisdiction, not a jury instruction (J.A. 788).

Judge Leon heard argument on this issue and found that there was no evidence that the government manufactured jurisdiction (J.A. 872).[26] Appellant's counsel articulated that his purpose in offering the proposed language was to have the jury focus on defining what appellant did "to cause a violation of the statute with regard to the use of the interstate facilities . . . I will argue they should parse out what he did from what the agents and what the informant did." (*id.* at 874).

---

[26] Appellant argues that Judge Leon "did not fully consider the issue," and was "dismissive" of appellant's request (Brief of Appellant at 28-29). This misreads the record. Appellant filed his request for the jury instruction on the night of February 16, 2011, not on February 6, 2011, as appellant asserts in his brief (Brief of Appellant at 29; J.A. 661, 870). Thus, what appellant refers to as Judge Leon's "dismissive" discussion of the proposed instruction occurred before appellant filed his proposed instruction (J.A. 668). After receiving the proposed instruction, Judge Leon discussed it at length with the parties (*id.* at 870-876).

In addition to his concerns about the accuracy of the proposed language, Judge Leon also voiced his concern that it would confuse the jurors (J.A. 875). Judge Leon denied appellant's request (*id.* at 876), and provided the following instruction to the jury regarding the interstate commerce element of the murder-for-hire statute:

> In order for you to find the Defendant guilty of this charge, the Government must prove beyond a reasonable doubt the following . . . Number one, that the Defendant, at or about the time charged in the indictment, traveled or caused another to travel in interstate commerce or used or caused another to use any facility of interstate or foreign commerce . . . The Government is not required . . . to prove that, pursuant to the murder for hire scheme, the Defendant knew that a facility of interstate or foreign commerce would be used or that interstate travel would occur. Rather, the Government must prove that the defendant intended to commit a murder for hire and, in so doing, used or caused another to use such a facility or travel in interstate commerce. . . Motor vehicles and telephones are considered facilities of interstate commerce. (J.A. 911-12.)

### C.  Argument

As discussed *supra* pp. 46-51, there was no manufactured jurisdiction in this case, which was the theory underpinning appellant's request for the modification of the jury instruction related to interstate commerce. The trial court, having heard the evidence in the case, found

that there was no evidence that the government manufactured jurisdiction (J.A. 872).

Further, the jury instruction the court provided addressed appellant's concern by focusing the jurors on appellant's intent to commit a murder-for-hire, and appellant's actions in either using facilities of interstate commerce himself, or urging others to do so. Under these circumstances there was no abuse of discretion.

Even if this Court viewed the trial court's action as a refusal to provide a requested instruction, the trial court did not commit error. Appellant's proposed supplemental language to the jury instruction was not substantively correct. The murder-for-hire statute specifically creates liability for "causing another" to travel in interstate commerce, or use a facility of interstate commerce, with the intent to commit a murder. 18 U.S.C. § 1958. Appellant's proposed instruction asked the jury to focus on actions taken "by Mr. Taplet alone and independent of the action(s) of, or assistance of" Thomas or the ICE agents involved in the case (J.A. 661). Appellant's instruction thus contradicted the plain language of the statute, and would have confused the jury. Further, the stated goal of the proposed instruction was substantially covered in the

court's complete instruction on the interstate commerce element. Given the strength of the government's evidence, contrasted with the lack of a legal and factual basis for appellant' proposed instruction, there is no support for the claim that the denial of appellant's request impaired appellant's ability to present his defense. As such, even under *de novo* review, there was no error. *United States v. Thomas,* 114 F.3d 228, 244 (D.C. Cir. 1997).

## V.   The Trial Court did not Err When it Directed Appellant to Focus on Issues Related to Sentencing During Appellant's Allocution.

### A.   Standard of review

This Court reviews an alleged denial of the right to allocution pursuant to Fed. R. Crim. P. 32(i)(4)(A)(ii) *de novo. United States v. Mahoney,* 527 Fed. Appx. 467, 472 (6th Cir. 2013); *United States v. Hernandez*, 291 F.3d 313, 315 (5th Cir. 2002); *but see United States v. Mack,* 200 F.3d 653, 657 (9th Cir. 2000) (applying harmless error standard).

### B.   Background

Appellant was scheduled for sentencing on July 15, 2011, however, sentencing was delayed until July 27, 2011, because appellant

refused to permit his attorney to file a sentencing memorandum (J.A. 948, 952). On July 27, 2011, appellant once again attempted to delay sentencing, but Judge Leon refused to grant another continuance (*id.* at 969). The government and appellant's counsel provided their allocutions, with the government asking for the statutory maximum sentence of ten years (*id.* at 973-74). Appellant's counsel reminded the court that pursuant to 18 U.S.C. § 3553(a), the court had the discretion to impose a sentence less than ten years, and proceeded to recommend a sentence of five years (*id.* at 976).

Consistent with Fed. R. Crim. P. 32(i)(4)(A)(ii), the trial court invited appellant to address the court before sentencing (J.A. 976). Appellant proceeded to read from an "affidavit of truth," which alleged: numerous violations of his rights as a "Moorish American;" undefined violations of the Federal Rules of Evidence; ineffective assistance of prior counsel; and a conflict of interest because the prosecutor's job was to drum up business for the court (*id.* at 976-982). Appellant also claimed that the prosecutor and the judge were members of a "judge-attorney brotherhood [that] deals in secret clubhouse members-only code words" (*id.* at 982). After appellant argued that the government

57

was conspiring to hold him even though he had filed "General Services Administration bonds" to secure his release, the court finally intervened. (*id.* at 984-85). By this time, appellant had been allocuting for himself for 20 minutes (*id.* at 985).

Judge Leon did not terminate appellant's allocution, rather, he tried to persuade appellant to focus on issues that related to an appropriate sentence (J.A. 985). Judge Leon explained that appellant's plethora of legal objections could all be addressed on appeal, and implored appellant to "limit your remarks to what you believe is an appropriate sentence" (*id.* at 986). When appellant persisted in trying to read the last six pages of his affidavit, the court offered to accept the affidavit as part of the record (*id.* at 987).[27] Appellant did not relent, and when he again insisted on reading the letter, Judge Leon informed appellant that he would not allow him to keep reading his affidavit (*id.* at 988). Judge Leon reiterated that appellant's legal concerns would be addressed on appeal, and advised appellant:

---

[27] There is no entry in the docket sheet or record of appellant actually submitting this affidavit to the trial court.

> This is a sentencing proceeding, and you are entitled to make whatever statements or arguments that relate to what the appropriate sentence is in your case to the Court. And I am more than prepared to listen to any statements or arguments you have with regard to what's the appropriate sentence. But I haven't heard any so far, and I have been sitting here for 20 minutes. And I don't think it's appropriate for you to just keep indefinitely reading about matters that have no relationship to this proceeding today. (J.A. 989.)

Judge Leon instructed appellant it was time "to either discuss the appropriate sentence or not" (J.A. 990). After conferring with his attorney, appellant continued his allocution. Appellant explained: 1) why he was angry with Ms. Buck; 2) that he was only "venting" about Ms. Buck, and had no intention of harming her; 3) that his lack of intent was evidenced by the fact that he never sent any money to the alleged hit-men; 4) that he did not have any mental health issues; and 5) that he had children who depended on him for support (*id.* at 991-997).

## C.   Argument

Appellant's claim that the trial court "infringed on Appellant's right to allocution under Rule 32" (Brief of Appellant at 33), is belied by the record. In context, it is clear that far from interfering with

appellant's right to allocution, to court sought to redirect appellant's allocution to areas that would impact his sentencing.

It is clear that Rule 32 entitles an appellant to personally address the court prior to sentencing. *Couch v. United States*, 235 F.2d 519, 521 (D.C. Cir. 1956). But by its plain language, this right is limited to providing information "to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). Thus, courts have upheld decisions to truncate a defendant's allocution when it strays into matters unrelated to sentencing. *See e.g., United States v. Alden*, 527 F.3d 653, 663 (7th Cir. 2008) (after permitting appellant to read a previously filed legal motion during allocution, trial court did not err when it ended appellant's allocution when he continued to make legal arguments unrelated to sentencing); *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993) ("judge did not unfairly prevent Muniz from speaking because the judge does not have to let the defendant re-argue the case at sentencing"); *United States v. Mitchell,* 392 F.2d 214, 216 (2nd Cir. 1968) ("Allocution does not grant a defendant the right to enter into a diatribe of the sentencing Judge, or of the Court, or of the judicial system of which he is a part."). In the instant case it is clear that the court did not interfere

with appellant's right to allocution by redirecting appellant to a discussion that might meaningfully impact appellant's sentence.

Appellant's reliance on cases such as *United States v. Jarvi,* 537 F.3d 1256 (10th Cir. 2008) is misplaced. In *Jarvi*, the *pro se* pleading appellant was prohibited from using focused on several sentencing enhancements that directly affected appellant's potential guideline range and sentence. *Id.* at 1258. By contrast, appellant's curtailed statement attacked the government and the court, and sought to revisit legal issues that may have impacted the conduct of the trial, but had no potential impact on appellant's sentence.

The trial court's attempt to refocus appellant to those issues related to sentencing was not error.

## VI. The Court did not Impose an Unreasonable Sentence

### A.    Standard of Review

A district court's sentence may be challenged for significant procedural errors or substantive unreasonableness. *Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Gardellini*, 545 F.3d 1089, 1094 n.6 (D.C. Cir. 2008). Significant procedural errors include "failing to calculate (or improperly calculating) the Guidelines range,

61

treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." *United States v. Russell,* 600 F.3d 631, 633-34 (D.C. Cir. 2010). Properly preserved procedural error arguments are subject to review for an abuse of discretion. *Gall*, 552 U.S. at 51; *United States v. Love*, 593 F.3d 1, 6 (D.C. Cir. 2010). Where, as here, appellant has not preserved his procedural error claims, this Court reviews only for plain error. *Russell,* 600 F.3d at 633-34; *In re Sealed Case,* 527 F.3d 188, 191-92 (D.C. Cir. 2008).

## B.    Background

There has been no objection to the calculation of appellant's applicable guideline range of 262-327 months of incarceration (J.A. 941; Brief of Appellant at 35). Similarly, there is no dispute that the maximum statutory sentence appellant could receive was 120 months of incarceration (*id.*). In addition to the presentence report, the trial court received a Memorandum in Aid of Sentencing from the government (J.A. 938). As described *supra* pp. 57-60, before sentencing the trial

62

court heard the allocutions of the government, appellant's counsel, and appellant himself.

After this lengthy sentencing hearing, Judge Leon sentenced appellant to the statutory maximum sentence of 120 months (J.A. 1003). Before announcing the sentence, Judge Leon explained that: 1) the government's evidence that appellant intended to have Ms. Buck murdered was overwhelming; 2) the sentence reflected the conduct of appellant in the present case; 3) appellant failed to show any remorse for his conduct; 4) the sentence was necessary to protect the public; 5) the sentence served to deter appellant from repeating this conduct in the future; and 6) the sentence would deter others from seeking to hire third parties to commit murder (*id.* at 1003-04). Judge Leon also noted that appellant would have the opportunity to obtain vocational training while he was incarcerated, and provided that appellant receive drug counseling and mental health counseling if deemed appropriate while appellant was incarcerated or on while he was on supervised release (*id.* at 1005-06). Judge Leon also endeavored to ensure the safety of Ms. Buck by prohibiting appellant from having any contact with her (*id.* at 1006).

Judge Leon also acknowledged he was aware of the "curious statutory situation that the guideline calculation is so disproportionate to what is statutorily permissible," but he did not indicate that he felt constrained to impose the maximum statutory penalty (J.A. 1004). Judge Leon concluded the sentencing by telling appellant, "[y]our conduct is very troubling and very dangerous, and this is the sentence that I believe is appropriate" (*id.* at 1007).

## C.    Argument

Appellant argues that his sentence was impacted by two procedural errors: 1) the trial court did not adequately articulate the rationale for its sentence; and 2) the court gave undue weight to the sentencing guidelines (Brief of Appellant at 38-39). Appellant did not raise either one of these objections at sentencing, and therefore this Court reviews the alleged procedural defects for plain error. *In re Sealed Case,* 527 F.3d at 191-92.

The trial court is obliged to explain the basis for its sentencing decision, but the "degree of explanation required depends on the circumstances." *In re Sealed Case*, 527 F.3d at 191. In this case, the minimum guideline sentence was 262 months, more than double the

statutory maximum. Where the minimum guideline sentence exceeds the statutory maximum sentence, the statutory maximum becomes the guideline sentence. U.S.S.G. § 5G1.1(a); *United States v. Morales,* 440 Fed. Appx. 776, 777 (11th Cir. 2011) (maximum statutory penalty of ten years is the sentencing guideline range for murder-for hire). If Judge Leon had elected to impose a sentence of less than 120 months, this would have been a departure, *see* U.S.S.G. § 5G1.1(a) commentary, and that departure would have required Judge Leon to provide a written explanation of the departure. *In re Sealed Case*, 527 F.3d at 191.

Here, Judge Leon imposed the guideline sentence, and in doing so outlined the facts he considered in imposing the sentence. While the case had a tortured procedural history, the facts of the case were not complicated, and Judge Leon's on-the-record explanation of the basis for his sentence was sufficient. While the judge was not required to consider every § 3553(a) factor, *In re Sealed Case,* 527 F.3d at 191, Judge Leon's explanation touched on all of the factors listed in § 3553(a), including the seriousness of the offense; the need for deterrence; the need to protect the public, particularly the victim; and the availability of vocational, drug, and mental health services for

appellant. Appellant's argument that the court did not adequately articulate the rationale for its sentence falls well short error, let alone error that is plain.

Similarly, appellant's unsupported argument that the court gave undue weight to the sentencing guidelines fails where the trial court was aware of the discrepancy between the minimum guideline sentence and the maximum statutory sentence, and never indicated that it felt constrained to impose a ten-year sentence. Indeed, appellant's counsel reminded the court it had discretion to impose a lower sentence (J.A. 976), and this Court generally presumes that the trial judge knew and correctly applied the law. *United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006). Absent a shred of evidence from the record to the contrary, there is no evidence that the court gave undue weight to the sentencing guidelines.

## Conclusion

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

Ronald C. Machen Jr.
United States Attorney

Elizabeth Trosman
Suzanne Grealy Curt
Anthony Scarpelli
John Cummings
Assistant United States Attorneys

_____/s/_____
John Cummings, D.C. Bar #986573
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 13,287 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

<div style="text-align:right">

/s/
_____
JOHN CUMMINGS
Assistant United States Attorney

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Allen H. Orenberg, 11200 Rockville Pike, Suite 301, Rockville, Maryland 20852, on this 29th day of May, 2014.

<div style="text-align:right">

/s/
_____
JOHN CUMMINGS
Assistant United States Attorney

</div>

# Addendum for Appellee

## I N D E X

18 U.S.C. § 2 ............................................................................ Add-1

18 U.S.C. § 1958 (1994) ...................................................... Add-2

18 U.S.C. § 1958 (2004) ...................................................... Add-3

18 U.S.C. § 3162 .................................................................... Add-4

Fed. R. Crim. P. 52(b) .......................................................... Add-6

U.S.S.G. § 5G1.1 .................................................................... Add-7

Westlaw.

18 U.S.C.A. § 2                                                                    Page 1

℃

Effective:[See Text Amendments]

United States Code Annotated Currentness
    Title 18. Crimes and Criminal Procedure (Refs & Annos)
        Part I. Crimes (Refs & Annos)
           Chapter 1. General Provisions (Refs & Annos)
             &rarr; &rarr; **§ 2. Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

CREDIT(S)

(June 25, 1948, c. 645, 62 Stat. 684; Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717.)

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Effective:[See Text Amendments] to October 10, 1996

United States Code Annotated
  Title 18. Crimes and Criminal Procedure
    Part I. Crimes
      Chapter 95. Racketeering
        → → § 1958. Use of interstate commerce facilities in the commission of murder-for-hire

(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so [FN1] shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title and imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

(b) As used in this section and section 1959--

  (1) "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage;

  (2) "facility of interstate commerce" includes means of transportation and communication; and

  (3) "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

CREDIT(S)

(Added Pub.L. 98-473, Title II, § 1002(a), Oct. 12, 1984, 98 Stat. 2136, § 1952A; renumbered § 1958 and amended Pub.L. 100-690, Title VII, §§ 7053(a), 7058(b), Nov. 18, 1988, 102 Stat. 4402, 4403; Pub.L. 101-647, Title XII, § 1205(k), Title XXXV, § 3558, Nov. 29, 1990, 104 Stat. 4831, 4927; Pub.L. 103-322, Title VI, § 60003(a)(11), Title XIV, § 140007(b), Title XXXII, § 320105, Title XXXIII, § 330016(1)(L), (N), (Q), Sept. 13, 1994, 108 Stat. 1969, 2033, 2111, 2147, 2148.)

    [FN1] So in original.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Add-2

Westlaw.

▷

**Effective: December 17, 2004**

United States Code Annotated Currentness
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         Chapter 95. Racketeering (Refs & Annos)
           →→ **§ 1958. Use of interstate commerce facilities in the commission of murder-for-hire**

**(a)** Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

**(b)** As used in this section and section 1959--

   **(1)** "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage;

   **(2)** "facility of interstate or foreign commerce" includes means of transportation and communication; and

   **(3)** "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

CREDIT(S)

(Added Pub.L. 98-473, Title II, § 1002(a), Oct. 12, 1984, 98 Stat. 2136, § 1952A; renumbered § 1958 and amended Pub.L. 100-690, Title VII, §§ 7053(a), 7058(b), Nov. 18, 1988, 102 Stat. 4402, 4403; Pub.L. 101-647, Title XII, § 1205(k), Title XXXV, § 3558, Nov. 29, 1990, 104 Stat. 4831, 4927; Pub.L. 103-322, Title VI, § 60003(a)(11), Title XIV, § 140007(b), Title XXXII, § 320105, Title XXXIII, § 330016(1)(L), (N), (Q), Sept. 13, 1994, 108 Stat. 1969, 2033, 2111, 2147, 2148; Pub.L. 104-294, Title VI, §§ 601(g)(3), 605(a), Oct. 11, 1996, 110 Stat. 3500, 3509; Pub.L. 108-458, Title VI, § 6704, Dec. 17, 2004, 118 Stat. 3766.)

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

18 U.S.C.A. § 3162                                                                                          Page 1

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    ⌐▤ Part II. Criminal Procedure
      ⌐▤ Chapter 208. Speedy Trial (Refs & Annos)
        →·→ **§ 3162. Sanctions**

**(a)(1)** If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

**(2)** If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h) (3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

**(b)** In any case in which counsel for the defendant or the attorney for the Government (1) knowingly allows the case to be set for trial without disclosing the fact that a necessary witness would be unavailable for trial; (2) files a motion solely for the purpose of delay which he knows is totally frivolous and without merit; (3) makes a statement for the purpose of obtaining a continuance which he knows to be false and which is material to the granting of a continuance; or (4) otherwise willfully fails to proceed to trial without justification consistent with section 3161 of this chapter, the court may punish any such counsel or attorney, as follows:

**(A)** in the case of an appointed defense counsel, by reducing the amount of compensation that otherwise would have been paid to such counsel pursuant to section 3006A of this title in an amount not to exceed 25 per centum thereof;

**(B)** in the case of a counsel retained in connection with the defense of a defendant, by imposing on such coun-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

sel a fine of not to exceed 25 per centum of the compensation to which he is entitled in connection with his defense of such defendant;

(C) by imposing on any attorney for the Government a fine of not to exceed $250;

(D) by denying any such counsel or attorney for the Government the right to practice before the court considering such case for a period of not to exceed ninety days; or

(E) by filing a report with an appropriate disciplinary committee.

The authority to punish provided for by this subsection shall be in addition to any other authority or power available to such court.

(c) The court shall follow procedures established in the Federal Rules of Criminal Procedure in punishing any counsel or attorney for the Government pursuant to this section.

CREDIT(S)

(Added Pub.L. 93-619, Title I, § 101, Jan. 3, 1975, 88 Stat. 2079.)

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Federal Rules of Criminal Procedure, Rule 52                                              Page 1

C

United States Code Annotated Currentness
  Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
    IX. General Provisions
    →→ **Rule 52. Harmless and Plain Error**

**(a) Harmless Error.** Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

**(b) Plain Error.** A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

CREDIT(S)

(As amended Apr. 29, 2002, eff. Dec. 1, 2002.)

Amendments received to 2-24-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Add−6

## PART G - IMPLEMENTING THE TOTAL SENTENCE OF IMPRISONMENT

**§5G1.1.     Sentencing on a Single Count of Conviction**

   (a)    Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.

   (b)    Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

   (c)    In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence --

      (1)    is not greater than the statutorily authorized maximum sentence, and

      (2)    is not less than any statutorily required minimum sentence.

*Commentary*

   *This section describes how the statutorily authorized maximum sentence, or a statutorily required minimum sentence, may affect the determination of a sentence under the guidelines. For example, if the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 48 months, the sentence required by the guidelines under subsection (a) is 48 months; a sentence of less than 48 months would be a guideline departure. If the applicable guideline range is 41-51 months and there is a statutorily required minimum sentence of 60 months, the sentence required by the guidelines under subsection (b) is 60 months; a sentence of more than 60 months would be a guideline departure. If the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 60 months, the guideline range is restricted to 51-60 months under subsection (c).*

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendment 286).

**§5G1.2.     Sentencing on Multiple Counts of Conviction**

   (a)    Except as provided in subsection (e), the sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently.

   (b)    Except as otherwise required by law (see §5G1.1(a), (b)), the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three, and Part C of this Chapter.